## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REGINALD A. BLUE,

     Plaintiff,

         v.                                 Civil Action No.  10-762 (JEB)

LISA P. JACKSON, Administrator, U.S.
Environmental Protection Agency,

     Defendant.

## MEMORANDUM OPINION

Plaintiff Reginald A. Blue was employed as an investigator at various Environmental

Protection Agency offices across the country for more than fifteen years.  In this lawsuit he

alleges that he was subjected to a number of adverse actions by his employer, including having

his responsibilities diminished and his salary reduced, being passed over for jobs, and,

ultimately, being terminated from his position.  Blue claims that the EPA, in taking these actions,

violated Title VII by discriminating against him both because of his race (black) and as

retaliation for engaging in protected activity (filing Equal Employment Opportunity complaints).

The EPA has now filed a Partial Motion for Judgment on the Pleadings or, in the

alternative, for Summary Judgment.  The Court will grant this Motion as to all claims that Blue

has failed to administratively exhaust, leaving only a claim of race-based discrimination relating

to his non-selection for a job in August 2008 and a claim of retaliation based on his termination

in December 2008.  In addition, the Court will deny without prejudice Defendant's request for

summary judgment on the merits of the remaining retaliation claim; as such a request is

1

premature prior to any discovery that could provide Blue with an opportunity to develop facts in his favor.

## I.     Background

According to the Complaint, which at this juncture must be presumed true, Blue began working for the EPA in 1992 as a Special Agent assigned to the Criminal Investigation Division in the agency's New York office.  Compl., ¶¶ 8-9.  In 1999, he was reassigned to the Minneapolis office, where he remained until April 2003.  Id., ¶ 10.  He was then reassigned to the Philadelphia office for approximately one year, before being transferred to the agency's headquarters in Washington, D.C., in May 2004.  Id., ¶ 11.  Blue remained in the D.C. office until his termination in December 2008.  Id., ¶ 12.

Plaintiff alleges that he was subjected to racial discrimination while employed at the Philadelphia and D.C. offices over a period of approximately five years.  Id., ¶¶ 11-13.  Blue claims that he experienced the following discriminatory acts:

- Efforts by his supervisors to diminish his authority, id., ¶¶ 13C, 27, 29;

- Refusal to permit Blue to apply for a "Rotational Assignment," id., ¶13H;

- Being overlooked for temporary development assignments "on at least two occasions," id., ¶ 24; and

- Being demoted to a lesser title and having his salary reduced by $900.  Id., ¶14.

Additionally, although not specifically alleged in the Complaint, Blue claims that in August of 2008 he was passed over for at least one position for which he was qualified.  Opp. at 2.  Blue informally contacted an EEO counselor in early September 2008 and subsequently filed a formal EEO complaint on September 29, challenging his August non-selection for the position of

Assistant Director for Investigations, Criminal Investigations Division based on his race, age, and retaliation.  Compl., ¶ 34; Opp. at 2.

Shortly before he submitted his EEO complaint, Blue's supervisors were informed of an issue with Blue's off-duty conduct – namely, allegations of domestic abuse by Blue against his wife.  Pl.'s Response to Def.'s Statement of Undisputed Material Facts (SUMF), ¶¶ 7-8.  The agency conducted an investigation into the alleged facts,  Compl., ¶ 36; Pl.'s Response to Def.'s SUMF, ¶ 9, and Blue was terminated from his position in December 2008.  Compl., ¶ 33.  The agency claims that the termination occurred because "Plaintiff had committed acts of domestic abuse against his wife and had exhibited a lack of candor" during the agency's internal investigation.  Mot., Exh. 7 (Notice of Proposed Removal).  Blue appealed the termination of his employment to the Merit Systems Protection Board (MSPB).  Opp., ¶ 4.  In his appeal, he argued that the agency's stated reason for his termination was merely pretext and that the actual reason for his discharge was "wrongful and illegal discriminatory and retaliatory conduct."  Compl., ¶ 36.  On July 27, 2009, the MSPB affirmed the agency's removal action.  Mot., Exh. 3 (MSPB Initial Decision), aff'd Blue v. EPA, 2010 MSPB LEXIS 1369 (Apr. 12, 2010).  Blue subsequently brought suit in this Court, and Defendant has now filed this Motion.

## II.    Legal Standard

Defendant has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, for summary judgment.  A Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss, see, e.g., Robinson–Reeder v. Am. Council on Educ., 532 F. Supp. 2d 6, 12 (D.D.C. 2008), and, like a 12(b)(6) motion, must be converted into a Rule 56 motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court."  Fed. R. Civ. P. 12(d).  Because matters outside of

the pleadings have been presented and will be considered, <u>see</u> Section III(A)(1), *infra*, the Court treats this Motion as one for summary judgment.

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. <u>Holcomb</u>, 433 F.3d at 895; <u>Liberty Lobby</u>, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Liberty Lobby.</u>, 477 U.S. at 248; <u>Holcomb</u>, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." <u>Taxpayers Watchdog, Inc., v. Stanley</u>, 819 F.2d 294, 297 (D.C. Cir. 1987). When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Liberty Lobby</u>, 477 U.S. at 255; <u>see also</u> <u>Mastro v. PEPCO</u>, 447 F.3d 843, 850 (D.C. Cir. 2006); <u>Aka v. Washington Hosp. Ctr.</u>, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." <u>Czekalski v. Peters</u>, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  The nonmovant is

required to provide evidence that would permit a reasonable jury to find in its favor.  <u>Laningham</u>

<u>v. United States Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is

"merely colorable" or "not significantly probative," summary judgment may be granted.  <u>Liberty</u>

<u>Lobby</u>, 477 U.S. at 249-50.

III.   **Analysis**

In Count I, Blue alleges race-based discrimination, and in Count II he alleges retaliation

based on protected activity, both under Title VII.  <u>Id.</u>, ¶¶ 37-42.  (While Blue also makes

reference to age-based discrimination within his EEO complaint, <u>see</u> Mot., Exh. 2 (EEO

Counselor's Report) at 2, he does not raise any such claims in his Complaint, and the Court will

thus not address them here.)  In seeking judgment on the pleadings, Defendant argues that the

bulk of the allegations in both counts should be dismissed for Plaintiff's failure to exhaust his

administrative remedies.  Mot. at 1.  As to what remains, Defendant also contends that Plaintiff's

retaliation claim relating to his termination should be dismissed on the merits.  The Court will

deal with each count in turn.

Ultimately, the Court agrees with Defendant that Plaintiff has only exhausted Count I's

race-based discrimination claim relating to his August 2008 non-selection and Count II's

retaliation-based claim concerning his termination.  It will, consequently, dismiss all other claims

for failure to exhaust administrative remedies.  The Court, however, rejects as premature

Defendant's arguments regarding the merits of the remaining retaliation claim, finding that

Plaintiff deserves some discovery to support his argument of pretext.

A.      Count I:  Race-Based Discrimination

In Count I, Plaintiff purports to bring a race-based Title VII discrimination claim.  While the Complaint captions this count as a "Pattern and Practice of Discrimination" claim, Compl. at 16, and refers to Defendant's alleged "pattern and practice of discriminating against African American males in the terms and conditions of employment," id., ¶ 38, the Court will evaluate Plaintiff's claim as it concerns him individually, as Title VII does not provide for pattern-and-practice challenges outside of class-based claims, which Plaintiff here does not purport to bring. See Lowery v. Circuit City Stores, 158 F.3d 742, 760–61 (4th Cir. 1998) ("[I]ndividuals do not have a private, non-class cause of action for pattern or practice discrimination"), vacated on other grounds, 527 U.S. 1031 (1999); Babrocky v. Jewel Food Co., 773 F.2d 857, 866–67 n.6 (7th Cir. 1985) (noting that pattern-or-practice "suits, by their very nature, involve claims of classwide discrimination" (internal citations omitted)); Hayes v. Chao, 592 F. Supp. 2d 51, 56 (D.D.C. 2008) (explaining that pattern-or-practice claims under Title VII cannot be brought by an individual plaintiff).

Having dispensed with Plaintiff's pattern-and practice claim, the Court will now turn to the thrust of Defendant's argument – namely, lack of exhaustion – before briefly discussing allegations of a hostile work environment.

        1.      Exhaustion

Federal employees may file a Title VII action in federal court only after exhausting their administrative remedies.  See Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010).  Title VII's exhaustion requirements, however, are not jurisdictional.  Artis v. Bernanke, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011) (citing Menominee Indian Tribe of Wis. v. United States, 614 F.3d 519, 527 (D.C. Cir. 2010)).  Accordingly, a "12(b)(6) motion to dismiss for 'failure to state a

claim upon which relief can be granted' is the appropriate vehicle to challenge an alleged failure

to exhaust" administrative remedies under Title VII.  Rosier v. Holder, 2011 WL 2516152, at *2

(D.D.C. 2011) (citing Artis, 630 F.3d at 1034 n.4).  "Because untimely exhaustion of [Title VII]

administrative remedies is an affirmative defense, the defendant bears the burden of pleading and

proving it." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997) (citation omitted).

"District courts may refer to materials outside the pleadings in resolving a 12(b)(6)

motion.  But when they do, they must also convert the motion to dismiss into one for summary

judgment." Kim v. United States, 632 F.3d 713, 719 (D.C. Cir. 2011) (citing Fed. R. Civ. P.

12(d)).  Where the Court so converts, however, the parties must be provided with an opportunity

to present evidence in support of their positions.  See Fed. R. Civ. P. 12(d), 56; Kim, 632 F.3d at

719.  Plaintiff here has presented significant additional evidence to support his argument, see

Opp. & Exhibits (totaling 125 pages), and he has cited the record below in his filings.  As

Plaintiff would thus not suffer prejudice from the conversion of the Motion into one for summary

judgment, the Court will so proceed.

Title 29 of the Code of Federal Regulations describes the administrative process for filing

discrimination complaints against the federal government.  First, one who believes he has been

subjected to discrimination by his federal-government employer "must consult a Counselor prior

to filing a complaint in order to try to informally resolve the matter."  29 C.F.R. § 1614.105(a).

"An aggrieved person must initiate contact with a Counselor within 45 days of the date of the

matter alleged to be discriminatory . . . ." Id. § 1614.105(a)(1); see Steel v. Schafer, 535 F.3d

689, 690 (D.C. Cir. 2008) (employee must initiate contact with EEO counselor within 45 days or

court may not consider discrimination claim).  If the matter has not been resolved through

counseling, the EEO Counselor informs the aggrieved person of the right to file a formal

complaint.  Id. §§ 1614.105(d), 1614.106(b).  In order to exhaust administrative remedies, a

complainant must file such a formal complaint; merely presenting a claim in an EEO counseling

session does not constitute exhaustion.  Hamilton v. Geithner, 666 F.3d 1344, 1350 (D.C. Cir.

2012).  After filing a written complaint, the employee may file a civil action after the agency

issues an adverse final decision or 180 days elapse without a decision, whichever happens first.

42 U.S.C. § 2000e-16(c).

Importantly, an employee must exhaust the administrative process for each discrete

action for which he seeks to bring a claim.  See National R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 113, 122 (2002); Coleman–Adebayo v. Leavitt, 326 F. Supp. 2d 132, 137 (D.D.C.

2004).  The Supreme Court in Morgan noted that "each incident of discrimination and each

retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment

practice.'" Morgan, 536 U.S. at 114.  As the court in Coleman–Adebayo further elaborated that

> The key to determining whether a claim must meet the procedural
> hurdles of the exhaustion requirement itself, or whether it can
> piggy-back on another claim that has satisfied those requirements,
> is whether the claim is of a "discrete" act of discrimination or
> retaliation or, instead, of a hostile work environment. "Discrete
> acts such as termination, failure to promote, denial of transfer, or
> refusal to hire" are individual acts that "occur" at a fixed time.
> Accordingly, plaintiffs alleging such discriminatory action must
> exhaust the administrative process regardless of any relationship
> that may exist between those discrete claims and any others.

326 F. Supp. 2d at 137-38 (quoting Morgan, 536 U.S. at 114).

As Plaintiff does not identify the alleged discriminatory acts with specificity, this Court

will separate the acts upon which he bases his claims into three distinct groups.  First, the Court

will look at the allegations relating to conduct from 2003 through early 2008 (in both the

Philadelphia and Washington EPA offices).  See Compl., ¶¶ 13-29.  Second, the Court will turn

to the August 2008 non-selection of Blue for the position of Supervisory Criminal Investigator.

Opp. at 2.  And finally, the Court will address Blue's termination in December 2008.  Compl., ¶ 38.  In bringing this Motion, Defendant contends that Plaintiff failed to exhaust administrative remedies for all of the allegedly racially discriminatory incidents – with the exception of the August 2008 non-selection – because he did not initiate contact with an EEO Counselor within 45 days of the incidents.  Mot. at 1.  The Court agrees.

          a.         Pre-August 2008 Allegations

Throughout the Complaint, Plaintiff refers to a variety of discriminatory actions he claims to have experienced before August 2008 based on his race.  These allegations span a period of five years (2003-08), two offices (Philadelphia and Washington), and different supervisors.  Compl., ¶¶ 11-32.  Specifically, Blue alleges his supervisors

- "diminish[ed] the level and degree" of Blue's authority, id., ¶13C;

- "attempt[ed] to extend plaintiff's probation period for an additional unprecedented six (6) month period," id., ¶13E;

- "attempt[ed] to generate negative and false work performance evaluations," id.;

- "generat[ed] chains of correspondence that included false and disparaging statements related to plaintiff's work performance," id.;

- "generat[ed] false correspondence which accused plaintiff of making and engaging in policies and practices which were inconsistent with his directives," id.;

- "refus[ed] to permit Blue to apply for a 'Rotational Assignment,'" id., ¶13H;

- demoted Blue to a lesser title and reduced his salary by $900, id., ¶14;

- planned an "attempted reorganization" that could have reduced or altered Blue's role and responsibilities, id., ¶20;

- "overlooked" Blue for temporary development assignments "on at least two occasions," id., ¶ 24; and

- stripped Blue of job responsibilities and duties.

Id., ¶¶ 27, 29.

Defendant argues that Blue made no effort to contact an EEO Counselor within the 45-day window following each of these incidents.  Mot. at 10-16; Reply at 5-11.  Blue counters that he "initiated timely contact with the defendants' Office of Civil Rights each time he was denied a GS-1811-15.  Between 2005 and 2008 the Plaintiff met with the former director of the Office of Civil Rights twice and her staff on three occasions."  Opp. at 5; see also Opp., Exh. O (Pl.'s Response to Def.'s SUMF), ¶13 ("Plaintiff met with the former Director of OCR or her staff on a timely basis each time he was denied a promotional opportunity.  The Plaintiff sought EEO counseling on at least five prior occasions to discuss the discriminatory practices at EPA.").

As Defendant notes, Blue fails to corroborate these conclusory assertions with any record evidence whatsoever.  Reply at 6.  Plaintiff's mere assertion of exhaustion – with no support for the assertion – is insufficient under Rule 56(c)(1)(A) to raise a genuine dispute of fact as to whether he administratively exhausted his pre-August 2008 allegations of race-based discrimination.

Plaintiff, moreover, cannot argue that administrative exhaustion of each of the alleged acts was not necessary under Morgan, 536 U.S. 101.  The Supreme Court there distinguished between discrete and ongoing discriminatory acts for the purpose of this exhaustion requirement.  On the one hand, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the [45]-day time period after the discrete discriminatory act occurred."  Id. at 113. On the other hand, ongoing discriminatory acts, such as those of a hostile work environment, "are different in kind from discrete acts [because t]heir very nature involves repeated conduct."  Id. at 115.

The allegations here are of the former type.  This is because each incident was of a
different kind from the others, was perpetrated over the course of several years, and involved
different supervisors.  Compare Thomas v. Vilsack, 718 F. Supp. 2d 106, 121 (D.D.C. 2010)
(finding that exhaustion was required because removal of duties was not "of a like kind" with
failure-to-promote claim previously brought before EEOC), and Nurriddin v. Goldin, 382 F.
Supp. 2d 79, 108 (D.D.C. 2005) (concluding that seven incidents over the course of five years
"indicates less a pervasive pattern of harassment, and more just isolated employment incidents
occurring over a long period of time") with Jones v. Bernanke, 685 F. Supp. 2d 31, 36-38
(D.D.C. 2010) (holding that latest negative employment action taken by employer need not be
dismissed as unexhausted because it was part of ongoing pattern of negative performance
reviews).

As the record shows that Plaintiff first contacted an EEO Counselor in September 2008
(about the August 2008 non-selection), Opp. at 2, any allegations of other discrete discriminatory
acts occurring more than 45 days before would be deemed unexhausted and thus procedurally
barred.

> b.   August Non-Selection

Defendant acknowledges that Blue's claim of race-based discrimination in regard to his
August 2008 non-selection for the position of Supervisory Criminal Investigator was
administratively exhausted and is thus properly before this Court.  Mot. at 1-2.  Following his
non-selection for the position, Blue timely filed an EEO complaint in September 2008 alleging
that he had been discriminated against based on his race and age, and in retaliation for filing a
previous EEO complaint, and had been "subjected to a hostile work environment culminating in
non-selection for the position of Assistant Director of Investigation."  Opp., Exh. B (EPA letter

accepting Blue's claim for investigation).  As neither party disputes that Plaintiff's race-discrimination claim regarding this incident survives this Motion, the Court need not address it further.

c.     Termination

Defendant next argues that because Blue's administrative challenge to his termination failed to include any allegation of race-based discrimination, he is precluded from making such a claim for the first time in this lawsuit.  Mot. at 16-17.  Blue does not contest Defendant's assertion that the earlier filings failed to mention any claim of racial discrimination.  Instead, he states generally that he lodged a "formal administrative complaint of employment discrimination, retaliation and wrongful termination with the United States of America Merit Systems Protection Board," and that he appealed the final order within the time set forth in the statute.  Opp., ¶ 4.

When an individual files suit in federal court following the exhaustion of his administrative remedies, his claims are limited to those that are "like or reasonably related to the allegations of the charge and growing out of such allegations," so the agency may have fair notice of the claims against it.  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (internal citation omitted); see also Johnson-Parks v. D.C. Chartered Health Plan, 713 F. Supp. 2d 39, 47 (D.D.C. 2010) ("Because the retaliation claim pled in the amended complaint is not the one that was alleged in the underlying administrative charges, it is barred for failure to exhaust."); Brown v. District of Columbia, 251 F. Supp. 2d 152, 162 (D.D.C. 2003) (plaintiff failed to exhaust gender and retaliation claims where her EEO filings alleged only race and disability discrimination).

Nor can Plaintiff argue that his race-based discrimination claim "arose out of the same basis for discrimination alleged" in the administrative proceedings below.  Jones v. Billington,

12 F. Supp. 2d 1, 7 (D.D.C. 1997).  In <u>Jones</u>, the court determined that a hostile-work-environment claim was properly before the court, even though the administrative claims did not formally allege the charge, as "[t]he hostile work environment alleged in the complaint is not based on conduct that is different from that alleged in the EEOC charge.  Furthermore, the basis for the hostile-work-environment is race, which is the same basis alleged in the EEOC charge." <u>Id.</u> at 7.  Here, however, Plaintiff's claim that his termination was race-based involves separate conduct that was never set forth in the administrative complaint.  <u>See</u> Compl., ¶ 38.  He, accordingly, has failed to exhaust his claim of race-based discrimination in connection with his termination.

The only act of alleged racial discrimination that may proceed, therefore, is that relating to his non-selection for promotion in August 2008.

2.      *Hostile Work Environment*

Throughout his Complaint, Blue makes passing references to a "hostile work environment," Compl. ¶¶ 2, 13A, 14, 16; however, he fails to actually assert such a claim in Count I.  Nonetheless, as Blue again references a hostile-work-environment claim in his Opposition, <u>see</u> Opp. at 13, the Court will address it here.  To prevail on a hostile-work-environment claim under either a discrimination or a retaliation theory, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Baloch v. Kempthorne</u>, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21, 114 (1993)).  "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it

interferes with an employee's work performance." Id. at 1201 (citing Faragher v. City of Boca

Raton, 524 U.S. 775, 787–88 (1998)).  "The Supreme Court has made it clear that 'conduct must

be extreme to amount to a change in the terms and conditions of employment.'" George v.

Leavitt, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting Faragher, 524 U.S. at 788).  By adhering to

these standards, the Court thereby "ensure[s] that Title VII does not become a general civility

code" that involves courts in policing "the ordinary tribulations of the workplace." Faragher,

524 U.S. at 788 (citation and internal quotation marks omitted).

Even assuming the veracity of all of Blue's allegations and giving him the benefit of all

possible inferences, the EPA did not subject Plaintiff to conduct "sufficiently severe or pervasive

to alter the conditions of his employment and create an abusive working environment." Harris,

510 U.S. at 21 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)) (internal

quotation marks omitted).  The incidents that Blue mentions in his Complaint – i.e., claims of

diminished responsibilities, ¶¶ 13C, 27, 29; "attempts" to take actions against Blue that never

ultimately happened, ¶13E, 20; refusal to permit Blue to apply for a "Rotational Assignment,"

id., ¶ 13H; claims of being "overlooked" for temporary development assignments, id., ¶ 24; and

claims of being demoted to a lesser title and reduction of salary by $900, id., ¶ 14 – span a period

of five years, multiple offices, and multiple supervisors, Compl. ¶¶ 11-32., and the acts do not

reach the high threshold that is required to establish a hostile-work-environment. See, e.g.,

Hernandez v. Gutierrez, 656 F. Supp. 2d 101, 106 n.6 (D.D.C. 2009) (no hostile work

environment where "one co-worker frequently touched his private parts in front of [the plaintiff],

told her his marriage was not the same as it used to be, talked to her about humans and animals

having sex, showed her sexually explicit pictures, and told her that a paperclip could be used as a

weapon and then ... put a fist close to her face." (internal quotation marks and citations omitted));

<u>Taylor v. Chao</u>, 516 F. Supp. 2d 128, 136–37 (D.D.C .2007) (no hostile-work-environment where coworkers "asked if [Plaintiff's] hair were 'red all over,'" called her 'sweetie' and 'baby,' and offered to "beat up her fiancé"); <u>Bryant v. Brownlee</u>, 265 F. Supp. 2d 52, 64 (D.D.C. 2003) (no hostile work environment where co-worker referred to plaintiff as "nigger" and another co-worker said "black women were at the bottom. The white men were first, the white women were right up there with them....").

Plaintiff may have experienced some challenges in his time at EPA, and he may well have believed his working conditions to be less than ideal.  No reasonable jury could find, however, that the actions Plaintiff alleges were "'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,'" <u>Baloch</u>, 550 F.3d at 1201 (quoting <u>Harris</u>, 510 U.S. at 21).  The Court, accordingly, will dismiss Plaintiff's suit to the extent that it alleges hostile-work-environment claims.

B.      <u>Count II:  Retaliation</u>

In Count II, Plaintiff brings a claim under Title VII that he was retaliated against for engaging in protected activity – specifically, the filing of complaints about discrimination with the EEO and engaging in informal EEO counseling.  Compl., ¶ 41.  Blue enumerates a number of "acts of retaliation" upon which the claim is based, including

> being stripped of significant work related duties and responsibilities, having been reassigned to a lesser job title and classification which resulted in an annual reduction in pay and the loss of certain supervisory duties and responsibilities which were attendant to his prior position, being foreclosed with respect to applying for certain developmental and/or promotional assignment opportunities and ultimately being terminated from his employment with the Agency.

Id.  The Court will divide Blue's allegations into two categories:  acts through early 2008 and Blue's termination in December 2008.  Blue, it should be noted, does not claim that his non-selection in August 2008 was retaliatory, and the Court will thus not address it here.

Defendant argues that because Blue failed to exhaust administrative remedies for the retaliatory acts in the early period, he fails to state a claim based on those acts.  Defendant further contends that even though Plaintiff has exhausted his claim of wrongful termination, Defendant is nonetheless entitled to judgment as a matter of law on the merits of his retaliation claim.  The Court agrees that Plaintiff has failed to exhaust in regard to the early acts and will, accordingly, dismiss any retaliation claims during that period of time.  The Court, however, believing that a grant of summary judgment as to Blue's termination would be premature, will deny that part of the Motion and permit discovery.

### 1. Pre-August 2008 Allegations

As with the race-based claims relating to the series of adverse actions dating from 2003 through early 2008, Defendant argues that Plaintiff has failed to exhaust his administrative remedies regarding retaliation-based Title VII claims in those years.  Reply at 5.  As discussed, *supra*, in Section III(A)(1)(a), Blue has made only generalized claims of exhaustion as to the alleged discrimination during this period of time, and there is nothing in the record to substantiate any efforts that he undertook to pursue these acts administratively.  For the same reason that Plaintiff failed to exhaust his race-based claims, he has also failed to exhaust his retaliation claims.  The Court will thus dismiss this count to the extent it relies on allegations of discriminatory retaliation prior to Blue's termination.

### 2. Termination

Defendant concedes that Blue has exhausted his retaliation claim based on his termination, but nonetheless argues that summary judgment should be granted in its favor because, even if Plaintiff can make out a *prima facie* case, he has failed to show that Defendant's proffered reason for Blue's removal was pretextual. Mot. at 17; Reply at 13. In his Opposition, Blue argues that Defendant's "stated reasons for removing the Plaintiff from his former place of employment are false or pretext for retaliation," Opp. at 3, and that discovery is necessary in order to provide Blue with the required information and evidence to support his claim. Id. at 12.

Given Blue's stated need for discovery to rebut the legitimate reasons that Defendant proffers for his termination, Opp. at 12-13, the Court agrees that it would be premature to grant summary judgment before Blue has been afforded any opportunity to develop facts to support his argument of pretext. See, e.g., Gordon v. Napolitano, 786 F. Supp. 2d 82, 86 (D.D.C. 2011) (reasoning that plaintiff's retaliation claims "are certainly thin and may well not survive a future summary judgment motion. Nevertheless, to dismiss them or convert this into a motion for summary judgment is premature at this time because Plaintiff has not had the benefit of any discovery to bolster her claims."); McWay v. LaHood, 269 F.R.D. 35, 37–38 (D.D.C. 2010) ("[T]he D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view [pre-discovery] summary-judgment motions ... with special caution.") (citing Aka v. Washington Hosp. Ctr., 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*)); Gray v. Universal Serv. Admin. Co., 581 F. Supp. 2d 47, 56 (D.D.C. 2008) (recognizing that summary judgment "must be approached with special caution" in discrimination cases) (internal citations omitted). As the Court agrees that Blue is entitled to conduct discovery before being required to oppose

Defendant's request for summary judgment on the claim of retaliation, it will deny Defendant's Motion here without prejudice.

**IV.   Conclusion**

As the only claims Plaintiff has administratively exhausted are Count I's claim connected to his August 2008 non-selection and Count II's claim based on his termination, the Court will dismiss all other claims for failure to exhaust administrative remedies.  The Court will also deny without prejudice Defendant's Motion for Summary Judgment on Count II.  A separate Order consistent with this Opinion will be issued this day.


*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  May 21, 2012