UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REGINALD A. BLUE,

    Plaintiff,

        v.

BOB PERCIASEPE, Acting Administrator,
U.S. Environmental Protection Agency,

    Defendant.

Civil Action No. 10-762 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff Reginald Blue is a black man who worked as a law-enforcement officer for the Environmental Protection Agency from 1992 to 2008. See Compl., ¶¶ 8, 12. In 2010, he brought this suit alleging that he had been repeatedly subject to racial discrimination while employed at the Agency and was later fired for complaining about that discrimination, both in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. Defendant previously filed a Partial Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment, which this Court granted as to all but three of Blue's claims, leaving him with only: (1) a claim of race-based discrimination related to his non-selection for a job in August 2008; (2) a claim of retaliation based on his termination in December 2008; and (3) an appeal from the Merit Systems Protection Board's decision affirming his termination. See Blue v. Jackson (Blue I), 860 F. Supp. 2d 67, 69 (D.D.C. 2012). Defendant has now filed a Motion for Summary Judgment as to those three surviving claims. Because no reasonable jury could find that Blue was either discriminated or retaliated against, and because the MSPB's affirmance of the EPA's decision to terminate him was not arbitrary or capricious, the Court will grant Defendant's

1

Motion.

I.      **Background**

Viewing the facts in the light most favorable to Blue, at all times relevant to this Motion, he worked as the Associate Special-Agent-in-Charge of the Operations Branch of the EPA's Criminal Investigations Division. See Compl., ¶¶ 5, 12. That job made him a law-enforcement officer with responsibilities such as: (1) carrying a firearm; (2) investigating environmental crimes; (3) maintaining his credibility and his ability to execute sworn affidavits in support of arrest and search warrants; and (4) maintaining his credibility and his ability to provide sworn testimony in litigation concerning investigations. See Mot., Declaration of Ella R. (Becky) Barnes, ¶ 18.

Blue's first remaining claim alleges race discrimination in his non-selection for the position of Assistant Director of CID's Investigations Branch in August 2008. See Opp. to MJP at 2; Blue I, 860 F. Supp. 2d at 69-70, 75. Blue claims that he was the best candidate for the Assistant Director job and that he was passed over because he is black. He applied for the position in June 2008 and made the "best qualified list" of individuals who would be considered for the job, along with Daniel Horgan (a white man) and two other individuals, a black woman and a white man. See Barnes Decl., ¶¶ 3-4. According to Blue's pleadings, he received a higher score in the competition to make that list than Horgan, who ultimately got the job, but Blue has not pointed to any evidence that might support this assertion. See Opp. at 10; Pl. Resp. to Def. Statement of Undisputed Material Facts (SUMF), ¶ 31.

The EPA used a "panel process" to decide whom to promote from the four candidates on the best-qualified list. See Barnes Decl., ¶ 5. A panel of CID officers evaluated each of the candidates and then recommended one to Ellen Stough, the Deputy Director for the EPA's

Office of Criminal Enforcement, Forensics, and Training (OCEFT), who made the final selection. See id., ¶¶ 8-9; Mot., Exh. K (Affidavit of Ellen Stough) at 1. The panel had five members: Ella Barnes (CID Director), Douglas Parker (CID Deputy Director), David Dillon (Special-Agent-in-Charge, Philadelphia Area Office CID), Mark Measer (CID Associate Director), and Carlos Rivera (CID Special-Agent-in-Charge of Technology). See Barnes Decl., ¶ 5. As Director and Deputy Director, Barnes and Parker were in the chain of command of every candidate, but none of the other three panelists served or had ever served in the chain of command of any of the candidates. See id.

On July 30, 2008, the panel interviewed each of the four candidates and then scored them based on their application materials, responses to an essay assignment, interview performances, and references. See id., ¶ 6; see also Mot., Exhs. L-P (affidavits of panel members). The final vote was unanimous: Horgan was ranked by every panel member as the best candidate of the four, with an overall "score" of 397, and Blue was ranked by every panel member as the worst, with a score of 251.5. See Mot., Exh. B (Panel Materials) at 33; Barnes Decl., ¶ 8. Blue disputes that the panelists assigned these scores, which the government has backed with both documentary evidence and Barnes's declaration, but he has once again failed to provide any proof to support his allegation. See Pl. Resp. to Def. SUMF, ¶ 11. Barnes conveyed the panel's endorsement to Stough, who on August 14, 2008, "relied solely" on that recommendation in choosing Horgan as the new Assistant Director for the Investigations Branch. See Stough Aff. at 2.

That choice led to Blue's second remaining claim, which alleges retaliation in the form of termination after he challenged his non-selection for the Assistant Director position. See Compl., ¶¶ 41-42; Blue I, 860 F. Supp. 2d at 69-70. On September 2, 2008, Blue informed the

3

Office of Civil Rights that he had been passed over for the Assistant Director job on account of his race, and on September 29 he filed a formal complaint to that effect. See Mot., Exh. I (Declaration of Glorida J. Gladden) at 1. A few months later, on December 17, Blue was terminated from the EPA. See Barnes Decl., ¶ 26; Mot., Exh. H (Decision on Proposed Removal). Blue claims that he was fired as punishment for exercising his protected right to file an Equal Employment Opportunity complaint.

But there is much more to this story, stretching back to over six months before Blue even applied for the Assistant Director position. On November 21, 2007, Blue's wife showed up at a New Jersey hospital suffering from injuries that she claimed Blue had inflicted while sexually assaulting her in their home. See Mot., Exh. D (Personnel Integrity and Qualifications Assessment (PIQA) Report) at 15-20. The hospital called the police, who brought her to the station, where she described the incident in two recorded interviews and disclosed that Blue had also sexually assaulted her on November 9, 2007. See id.

Blue was subsequently arrested and charged with criminal sexual contact in violation of New Jersey law. See id. at 7-8. When Blue's superiors at CID discovered that he had been arrested, they required him to surrender his firearm. See Barnes Decl., ¶ 13. A few months later, in April 2008, the New Jersey authorities notified CID that they would not be prosecuting a criminal case against Blue. See id., ¶¶ 14-16. The CID and OCEFT higher-ups then decided that they should conduct their own internal investigation into the incident, a task assigned to the PIQA unit. See id. PIQA reviewed the police records, conducted interviews concerning the assault allegations, and, in July 2008, submitted a final report on the matter to Stough and Barnes. See id.; Barnes Decl., ¶ 16.

Barnes, the EPA official responsible for proposing disciplinary action against Blue, reviewed the PIQA report and concluded that Blue had twice sexually assaulted his wife the year prior and that he had been "less than candid" in his testimony to PIQA investigators regarding those events. See Barnes Decl., ¶¶ 16-17. Because Blue's job regularly required him to carry a weapon and to provide sworn testimony, Barnes decided to begin the process to propose his termination. See id., ¶ 18. In July 2008, before Blue even interviewed for the Assistant Director position, she asked an OCEFT attorney to prepare a draft Notice of Proposed Removal, which was completed on August 21, 2008. See id., ¶¶ 19-20. By that point, according to Barnes, she had decided to go forward with the proposed removal. See id. On September 25, Barnes met with Blue and explained that because of the alleged assaults and his subsequent lack of candor, he could either voluntarily resign his position or be removed. See id., ¶ 22. Blue declined her offer to resign; consequently, on October 10, Barnes issued the Notice of Proposed Removal, which Stough approved two months later, culminating in Blue's termination. See id., ¶¶ 23-24, 26.

Blue subsequently challenged his termination before the MSPB, but his appeal was denied on April 12, 2010. See Administrative Record (AR) 966-969. He then filed this suit, alleging that he had been racially discriminated and retaliated against by the EPA on a number of occasions throughout his career there. See Blue I, 860 F. Supp. 2d at 72-78. Defendant moved for judgment on the pleadings, and this Court granted that motion as to all the claims that Blue had failed to administratively exhaust, leaving only the claims now at issue. Id. at 67.

## II. Legal Standard

Blue's first two claims are evaluated under the familiar summary-judgment standard. Summary judgment may be granted if "the movant shows that there is no genuine dispute as to

5

any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely

colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, 477 U.S. at 249–50.

Blue's third claim, which relates to the MSPB, must be analyzed under the standard for Administrative Procedure Act suits. The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### III. Analysis

Title VII claims of race discrimination or retaliation that are based upon circumstantial evidence, such as Blue's, ordinarily proceed in three steps. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Kersey v. Washington Metr. Transit Auth., 586 F.3d 13, 16-17 (D.C. Cir. 2009). First, the plaintiff carries the initial burden of establishing a *prima facie* case of racial discrimination or retaliation by a preponderance of the evidence. See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Kersey, 586 F.3d at 17. Next, the defendant has the burden to rebut that *prima facie* case with evidence of "a legitimate, nondiscriminatory [or nonretaliatory] reason for its actions." Kersey, 586 F.3d at 17 (quoting Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 142 (2000) (internal quotation marks omitted) (alteration in original)). "This burden is one of production, not persuasion; it can involve no credibility assessment." Reeves, 530 U.S. at 142 (internal quotation marks omitted). Finally, if the defendant has produced such evidence, then the plaintiff must show by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination [or retaliation]." Id. at 143 (internal quotation

7

marks omitted). In other words, the plaintiff must prove "that the employer's asserted non-discriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).

The three-step process differs slightly at the summary-judgment stage. At this point in the proceedings, if the defendant can offer a legitimate reason for the challenged action, then district courts may skip over the first step of the analysis, since in such circumstances "the *prima facie* case is a largely unnecessary sideshow." Id. For Blue's discrimination and retaliation claims, therefore, the Court will ask whether the EPA has "asserted a legitimate, non-discriminatory [or non-retaliatory] reason" for its actions. Id. at 493; see also Moran v. U.S. Capitol Police Bd., 887 F. Supp. 2d 23, 31 (D.D.C. 2012) (applying Brady framework to retaliation claim). If the Court finds that the EPA has provided such reasons, then the only remaining question will be whether Blue has produced enough evidence for a reasonable jury to find that those reasons were merely pretexts for what was actually race discrimination or retaliation. See Brady, 520 F.3d at 494. After separately discussing Blue's discrimination and retaliation claims, the Court will conclude by analyzing his claim concerning the MSPB decision.

    A. Race Discrimination in Non-Selection

The EPA asserts that Stough passed over Blue for the Assistant Director job not because he is black, but because she "relied solely" on the recommendation of the selection panel, which unanimously ranked Horgan as the best candidate for the position and Blue as the worst. See Stough Aff. at 2. The use of such panels is common in both business and government, and a defendant's reliance on a panel's recommendation suffices as a legitimate "non-discriminatory

8

reason" for declining to promote a particular candidate. See Fischbach v. District of Columbia Dept. of Corrections, 86 F.3d 1180, 1182 (D.C. Cir. 1996); see also Obi v. Anne Arundel County, Md., 28 Fed. Appx. 333, 335 (4th Cir. 2002); Mason v. Geithner, 811 F. Supp. 2d 128, 203 (D.D.C. 2011). The EPA, therefore, has met its burden of production.

That brings the Court to the question of whether Blue could hope to convince a jury that Stough's reliance on the recommendation of the selection panel was merely a veil for intentional race discrimination against him. In other cases involving selection panels, plaintiffs have alleged discrimination based on the composition of the panel, see Lewis v. City of Boston, 321 F.3d 207, 217 (1st Cir. 2003), the panel's scoring criteria, see Moore v. Illinois Dept. of Public Health, No. 98-6498, 2000 WL 1499439, at *4 (N.D. Ill. Oct. 6, 2000); Mitchell v. Utah State Tax Comm'n, 26 F. Supp. 2d 1321, 1325 (D. Utah 1998), or the exercise of outside influence on the panel by a prejudiced party. See Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990). The best Blue can muster, however, is the conclusory assertion that the EPA "has a long history of putting panels together with only Caucasians or people similar to them," Opp. at 10-11, but he provides no evidence to back up this claim or even to suggest that the selection panel in his case was in fact composed only of white members. Instead, Blue's only evidence of discrimination is that, according to him, he was better suited for the Assistant Director position than was Horgan. See id. at 10-16.

Blue is correct that the promotion of a less qualified candidate may indicate that the defendant's stated reason for the non-selection was merely a pretext for discrimination. See Fischbach, 86 F.3d at 1183; Parker v. Sec'y, U.S. Dept. of Hous. and Urban Dev., 891 F.2d 316, 322 (D.C. Cir. 1989). It is important to remember, however, that the Court does not serve as "a super-personnel department" that reexamines the EPA's employment decisions. Holcomb v.

Powell, 433 F.3d 889, 897 (D.C. Cir. 2006). For Blue to prove discrimination on this basis, he would have to convince a jury that the EPA's decision to promote Horgan over him was an error "too obvious to be unintentional." Fischbach, 86 F.3d at 1183; see also Ramey v. Bowsher, 915 F.2d 731, 735 (D.C. Cir. 1990). In other words, the difference in their qualifications must have been "great enough to be inherently indicative of discrimination." Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (internal quotation marks omitted). Only then could a jury "legitimately infer that the employer consciously selected a less-qualified candidate – something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." Id. (internal quotation marks omitted). By contrast, "[i]n a close case, a reasonable [jury] would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998).

In this case, no reasonable jury could find that Blue was such an obviously superior candidate that the EPA must have discriminated against him when it chose Horgan for the Assistant Director position. In fact, Blue does not point to any record evidence for his qualifications, but given that he is *pro se* and these facts are largely undisputed, the Court will consider them. First, Blue emphasizes that he has an undergraduate degree in Criminal Justice and that he earned 36 credits toward a Masters in Public Administration, while Horgan only has an undergraduate degree in science. See Opp. at 12. This difference in credentials, however, is hardly significant. Blue also recounts his record at the EPA, which included several rounds as the lead case agent in investigations that culminated in guilty verdicts, a number of awards, positive evaluations from his supervisors, and other professional achievements, while

10

disparaging Horgan for his alleged participation in the "McWane case," which Blue says involved prosecutorial misconduct and did not produce a guilty verdict. See Opp. at 12-16. Once again, however, these assertions, even if supported by evidence, offer him no succor. This is because Horgan himself has led an impressive career, including a stint in the Peace Corps, time in the Arizona Attorney General's Office, and almost two decades in CID, where he worked on a number of significant environmental cases. See Mot., Exh. P (Douglas Parker Witness Affidavit) at 2. Indeed, every panel member ranked Horgan the most suited for the Assistant Director job, and Blue the least, of the four candidates. See Mot., Exh. B (Panel Materials) at 33; Barnes Decl., ¶ 8.

The difference in qualifications between Blue and Horgan, if any, is therefore not nearly so extreme that a reasonable jury could conclude that the EPA passed Blue over for the Assistant Director position because he is black. Compare Aka, 156 F.3d at 1295-99 (jury could infer discrimination where plaintiff passed over for pharmacy technician position had master's degree with concentration in health-service management and had spent two decades working at the pharmacy, while candidate ultimately hired by defendant had not graduated college and had spent two months volunteering part-time at the pharmacy) with Bailey v. Washington Metr. Area Transit Auth., 810 F. Supp. 2d 295, 305-06 (D.D.C. 2011) (jury could not infer discrimination where plaintiff passed over for human-resources-supervisor position had college degree, certificate in human resources, and nearly twenty years of experience in human resources, while candidate ultimately hired by defendant had college degree, no certificate, and twenty-two years of experience in human resources).

Because there is no genuine issue of material fact as to whether the EPA's non-selection of Blue for the Assistant Director job was due to racial animus, the Court will grant Defendant's Motion as to the race-discrimination claim.

B. Retaliation for EEO Complaint

The EPA asserts that it terminated Blue's employment because it had concluded that he twice sexually assaulted his wife and then dissembled when PIQA interviewed him about the matter, conduct incompatible with his role as a law-enforcement officer who both carried a firearm and needed to maintain his credibility. Under Brady's framework, this easily constitutes a legitimate, non-discriminatory reason for the firing, see Brady, 520 F.3d at 494, leaving Blue to show evidence of pretext.

Blue argues that a jury could infer that the EPA's stated reason for firing him was a pretext for retaliation because he was informed of his termination just a few weeks after his September 2008 EEO complaint regarding his non-selection for the Assistant Director position. While this temporal proximity might raise some eyebrows, the EPA points out that Barnes commenced the termination process for Blue in July 2008, months before he first approached the Office of Civil Rights about his non-selection. A reasonable jury could thus not conclude that the concurrence of the two events was design, rather than happenstance. See Sewell v. Chao, 532 F. Supp. 2d 126, 139 (D.D.C. 2008) ("[T]emporal proximity ... standing alone ... is insufficient to discredit defendant's proffered explanation."), aff'd sub nom. Sewell v. Hugler, No. 08–5079, 2009 WL 585660 (D.C. Cir. Feb. 25, 2009). Indeed, "[e]mployers need not suspend previously planned [actions] upon discovering that [an employee has engaged in a protected activity], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." Clark Cnty Sch. Dist. v. Breeden,

532 U.S. 268, 272 (2001). Blue has thus not created a material dispute of fact that would permit him to get to a jury.

Blue alternatively challenges the legitimacy of the EPA's proffered reason for his termination by contending that "[n]either Ms. Barnes, her attorney, supervisors, investigators [*sic*] were eye witnesses to any events that happen[ed] in the Plaintiff's home in November 2007," Opp. at 9, and that the police reports recounting his wife's statements about the incidents are inadmissible hearsay. See Fed. R. Evid. 802. He concludes that the Court may not consider a justification based on those facts.

While the hearsay rule does bar the Court from considering the November 2007 police reports for the truth of Blue's wife's allegations, the rule does not prevent the Court from using those reports and the declarations of EPA officials to establish that Blue's wife made such claims, that the police recorded them, and that the EPA believed them to be true. See Fed. R. Evid. 801(c)(2) (hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement"). The remainder of Blue's argument comes down to his insistence that he never sexually assaulted his wife. Whether that is true or not is irrelevant; all that matters for the success of his retaliation claim is whether the EPA believed – rightly or wrongly – that he had assaulted his wife and terminated him on that basis. Given the Agency's careful investigation into the matter, no jury could believe that this was not the actual cause for its termination decision. Blue has provided absolutely no evidence, let alone an argument, that could persuade a jury that the EPA fired him for any reason other than its belief that he had sexually abused his wife and then lied to PIQA about it.

The Court will thus grant Defendant's Motion as to Blue's retaliation claim.

C. MSPB Appeal

As a final matter, it appears, although not with any clarity, that Blue also seeks to appeal the MSPB decision upholding the EPA's decision to fire him. See Compl. at 2-3. Defendant has filed a "Supplemental Memorandum" in support of its Motion for Summary Judgment seeking dismissal of Blue's appeal from the MSPB decision, see ECF No. 47 (June 28, 2013), which Blue's Supplemental Opposition counters only by claiming that Defendant has articulated the wrong standard of review for such a matter, and then also, confusingly, referring to the "entire action" as a "Title VII claim." See Opp. to Supp. Memo. at 1. In any event, again construing a *pro se* plaintiff's pleadings liberally, the Court will assume that Blue intended to challenge the MSPB decision, especially since the arguments in his main Opposition brief, insisting that he never sexually assaulted his wife, make more sense in that context.

Challenges to MSPB decisions are ordinarily heard in the Court of Appeals for the Federal Circuit, see 5 U.S.C. § 7703(b)(1), but "mixed cases" involving a challenged employment action that is also alleged to have been discriminatory or retaliatory under Title VII may instead be appealed to federal district court. See Williams v. Dept. of the Army, 715 F.2d 1485, 1489-91 (Fed. Cir. 1983); 5 U.S.C. §§ 7702, 7703(b)(2) & (c). In a "mixed case," the Court reviews the MSPB only for whether its decision was "arbitrary or capricious, obtained without compliance with lawful procedures, unsupported by substantial evidence[,] or otherwise not in accordance with law." Barnes v. Small, 840 F.2d 972, 979 (D.C. Cir. 1988).

In order to uphold the EPA's decision to terminate Blue, the MPSB had to find the following four points by a preponderance of the evidence:

> (1) That the EPA had proved its charge of conduct unbecoming a law enforcement officer;
> (2) That the EPA had proved its charge of lack of candor;

14

> (3) That the EPA had proved a nexus between any proven
> misconduct and the efficiency of the service; and
> (4) That the EPA had proved that its chosen penalty of removal
> was within the bounds of reasonableness.

See AR 492; 5 U.S.C. §§ 7701(c)(1)(B), 7513(a). Blue also raised an affirmative defense alleging retaliation, which he had to establish by a preponderance of the evidence. See 5 C.F.R. § 1201.56(a)(2)(iii). The Administrative Judge assigned to the case relied on a set of stipulated facts agreed to by both sides, as well as documentary evidence and witness testimony. See AR 403, 488-565. He ultimately concluded that the EPA had met its burden on all four points and that Blue had failed to establish his affirmative defense. See AR 416, 418, 421-22, 423, 424. The Judge therefore affirmed the Agency's decision to terminate Blue. See AR 402-429.

Having examined the Administrative Judge's decision, the Court concludes that it was based on substantial evidence on the record and that it was not arbitrary, capricious, or contrary to law. As to the first issue, whether the EPA established that Blue had engaged in conduct unbecoming of an officer by sexually assaulting his wife, the Administrative Judge credited Blue's wife's version of the events – recounted in two recorded interviews with the police – over Blue's. See AR 410-11. Although she subsequently recanted her allegations, the Judge found that her initial recitation was more persuasive than the milder narrative she provided months later. See AR 413. Given that this is not a criminal case prosecuted under a reasonable-doubt standard, the Judge's conclusion had more than enough evidence to support it.

On the second point, whether the EPA had proved that Blue had not been candid with PIQA, the Administrative Judge found that Blue's responses to the investigators' questions were either incomplete or not fully truthful. See AR 418. This conclusion rested on the broad, flexible definition of "lack of candor" used in MSPB hearings, "whose contours and elements depend upon the particular context and conduct involved…[and which] may involve a failure to

15

disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete." Ludlum v. Dept. of Justice, 278 F.3d 1280, 1284 (Fed. Cir. 2002). The Administrative Judge's finding on this point follows logically from his earlier decision to credit Blue's wife's initial reports to the police, since Blue's statements to PIQA investigators – denying that he assaulted his wife or that she was even upset on the nights of the alleged attacks, see AR 491 – are impossible to reconcile with her descriptions of those events. Like the first point, then, the Judge's conclusion on this issue was hardly arbitrary or capricious.

Third, the Administrative Judge found that the EPA had established the required nexus between Blue's misconduct and the efficiency of the service. See AR 421. "Nexus" in this context means a "connection between the employee's off duty misconduct and the employee's job-related responsibilities," White v. U.S. Postal Service, 768 F.2d 334, 335-36 (Fed. Cir. 1985), and may be established in one of three ways: (1) "a rebuttable presumption … that may arise in certain egregious circumstances based on the nature and gravity of the misconduct"; (2) "a showing … that the misconduct affects the employee's or his co-workers' job performance, or management's trust and confidence in the employee's job performance"; or (3) "a showing … that the misconduct interfered with or adversely affected the agency's mission." Kruger v. Dept. of Justice, 32 M.S.P.R. 71, 74 (1987). The Administrative Judge relied on the second approach, finding that Blue's attack on his wife and his subsequent lack of candor made him less trustworthy to carry a firearm and to carry out his duties as a law-enforcement officer. See AR 421. Given Blue's important responsibilities as an Associate Special-Agent-in-Charge at the EPA, this conclusion was plainly reasonable and supported by the evidence.

Fourth, the Administrative Judge found that the EPA's decision to terminate Blue did not exceed the bounds of reasonableness, meaning that the EPA considered all the relevant

mitigating factors and that the punishment selected for his misconduct was not so excessive that it would be an abuse of discretion, arbitrary, capricious, or unreasonable. See AR 424; Douglas v. Veterans Admin., 5 M.S.P.R. 280, 302, 306 (1981). The Judge noted the high standard to which law-enforcement officers like Blue are held and also emphasized the problem posed by Blue's lack of candor in the PIQA investigation, especially given that he had to maintain his credibility so that he could provide sworn testimony in future investigations. See AR 251-56, 424, 523; see also Giglio v. United States, 405 U.S. 150, 154 (1972) (prosecution must turn over evidence in its possession that could be used to impeach the credibility of a witness); Mike v. Ryan, 711 F.3d 998, 1011 (9th Cir. 2013) (Giglio applies to evidence of a law-enforcement officer's misconduct in an unrelated case); United States v. Kiszewski, 877 F.2d 210, 216 (2d Cir. 1989) (same). Although the sanction of termination is certainly severe, the Judge's decision to affirm it was supported by the evidence and was not arbitrary or capricious.

Finally, the Judge found that Blue had not established his affirmative defense of retaliation. See AR 422. To prove retaliation for filing an EEO complaint, Blue had to show (1) that he engaged in protected activity; (2) that the EPA knew of the protected activity; (3) that his termination could, under the circumstances, have been retaliation; and (4) that there was a genuine nexus between the alleged retaliation and the termination. See Hunter v. Dept. of Justice, 110 M.S.P.R. 219 ¶ 8 (2008). The Administrative Judge noted that Blue's only evidence for retaliation was the coincidence of his filing of the EEO complaint a month before the notice of proposed removal for him was issued, but that in fact the EPA had begun the process of terminating Blue long before he ever contacted the Office of Civil Rights. See AR 420-23. As this Court has also found no issue of retaliation under these circumstances, see Section III.B, *supra*, it would be hard pressed to reverse the MSPB's identical conclusion.

In sum, the Administrative Judge's decision to uphold the EPA's termination of Blue was supported by sufficient evidence in the record and was not arbitrary, capricious, or an abuse of discretion. The Court must affirm it.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order that will grant Defendant's Motion for Summary Judgment. A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 27, 2013